IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GAYLORD DUFF, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CV140 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| GEORGE GREEN, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the defendant's Motion for Summary Judgment (Filing No. 96). The defendant filed a brief (Filing No. 97) in support of the motion. The plaintiff filed a brief (Filing No. 100) in opposition to the defendants' motion. The parties rely on the evidence filed with an earlier motion for summary judgment. **See** Filing Nos. 66, 68 and 79.

### INTRODUCTION

On March 29, 2005, the plaintiff filed the complaint against twenty-one named defendants alleging that all of the defendants, acting in their individual capacities, violated 42 U.S.C. § 1983, by depriving the plaintiff of his right to liberty when he was denied release from incarceration by his mandatory release date. **See** Filing No. 1. Specifically, the plaintiff alleges the defendants violated his constitutional rights when he was denied release after he refused to voluntarily submit to a blood test for a DNA sample pursuant to the DNA Detection of Sexual and Violent Offenders Act, Neb. Rev. Stat. § 29-4106(2). *Id.* at ¶ 29. The plaintiff was released from custody on July 26, 2001, after Judge Steven D. Burns of the District Court for Lancaster County, Nebraska held that the extension of the plaintiff's incarceration was an unconstitutional application of the DNA Act as a violation of the Ex Post Facto Clause of the United States Constitution. *Id.* at ¶ 30.

On December 6, 2005, the plaintiff's claim was dismissed, without prejudice, as against the defendants Judy Remil, Terry Butkus, Aaron Hall, Robert, Schmucker, Allen Pherson and Richard Leech for failure to effect service pursuant to Federal Rule of Civil

Procedure 4(m).  **See** Filing No. 50.  On February 6, 2006, the court granted the motion to dismiss for the plaintiff's failure to state a claim against the defendants' James Gosch, Kenneth Schmit, Linda Leonard, Frank Hopkins, Linda Willard, Donald Stenberg, Fred Britten, Scott Marshall, Brad Ekstrom, Karen Shortridge and Harold Clark.  **See** Filing No. 51.  In the February 6, 2006 order, the court stated, "Although plaintiff recites the job titles of all the defendants in his complaint, he alleges that only defendants Judy Remil, Terry Butkus, Robert Houston, Valery Granholm and Charles West took any actions against him that could give rise to liability for a § 1983 violation."  **See *id.*** at p. 5.  Since Judy Remil and Terry Butkus had already been dismissed, the remaining defendants were Robert Houston, Valery Granholm and Charles West.  Additionally, George Green did not join in the February 6, 2006 motion to dismiss and is still a defendant.  Subsequently, the court granted summary judgment in favor of the defendant Robert Houston, Valery Granholm and Charles West.  **See** Filing No. 92.

In the present action, the plaintiff claims that the actions of the defendant resulted in him being held beyond his release date, which violated his civil rights pursuant to 42 U.S.C. § 1983, and that he is entitled to compensatory damages and punitive damages. The defendant George Green now seeks summary judgment based on qualified immunity arguing he were not responsible for the policy decision to take away the plaintiff's good time credit.  Additionally, the defendant contends the plaintiff is barred from recovery by the ***Rooker-Feldman*** doctrine.

The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the matter arises under the Constitution and laws of the United States as a federal question. The undersigned magistrate judge is specially designated to exercise jurisdiction over this matter, pursuant to 28 U.S.C. § 636 and after the consent of the parties.  **See** Filing Nos. 55 and 90.

## UNCONTROVERTED FACTS

1.   On November 2, 1988, the plaintiff was sentenced for a period of 12 to 20 years for First Degree Sexual Assault of a Child.  Under the good time law in effect in 1988, the plaintiff would have been discharged in ten years and five months.  The plaintiff's

2

mandatory discharge date, including the good time credits, was scheduled for September 28, 1998.  **See** Filing No. 1, Complaint ¶ 24.

2. While the plaintiff was still serving his term of confinement, the DNA Detection of Sexual and Violent Offenders Act[1] (1997 DNA Act), LB 278 (Laws 1997) was passed and became effective.  **See** Neb. Rev. Stat. § 29-4101 (Cum. Supp. 2004) (amended 1996).

3. As applicable to the plaintiff, the 1997 DNA Act provided:

> A person who was convicted of a felony sex offense or other specified offense before September 13, 1997, and who is still serving a term of confinement for such offense on September 13, 1997, shall not be released prior to the expiration of his or her maximum term of confinement unless and until a DNA sample has been drawn.

Neb. Rev. Stat. 29-4106(2) (amended 1996).

4. After adoption of the 1997 DNA Act, the Attorney General's Office issued an opinion in response to questions by the then Director of the Nebraska Department of Correctional Services.  **See** Filing No. 68, Exhibit 7 - AGO Opinion, October 8, 1997.

5. The Director of the Nebraska Department of Correctional Services issued a memorandum outlining procedures to be followed in implementing the 1997 DNA Act.  **See id.**, Exhibit 6 - NDCS Memorandum, November 6, 1997.

6. Under the 1997 DNA Act, the Nebraska State Patrol was responsible for issuing rules for obtaining samples.  **See** Neb. Rev. Stat. § 29-4105(1).  Title 272, Chapter 20, of the Nebraska Administrative Code was promulgated pursuant to the Administrative Procedures Act and set forth in detail the method to follow when testing DNA in accordance with the 1997 DNA Act.  **See** Filing No. 68, Exhibit 5.

7. One of the requirements set forth in Title 272, Chapter 20, of the Nebraska Administrative Code was that the name and social security number (if available) of the offender must be placed on the blood sample after it is drawn.  **Id.** at p. 2 - Neb. Admin. Code, Title 272, Chapter 20, Section 1.02F.

---

[1] Now called the DNA Identification Information Act.  **See** Neb. Rev. Stat. § 29-4101.

8. The blood was drawn by a nurse. The nurse was also responsible for placing the inmate's name and social security number on the vial of blood. **Id.** Exhibit 1 ¶ 13.

9. The only reference to the defendant contained in the Complaint is paragraph 20 of section two which merely states that the defendant was counsel for the Department of Corrections at all relevant times herein and has a business address of Folsom and West Prospector Place, Lincoln, Nebraska 68522. **See** Filing No. 1, p. 5.

10. The defendant had no involvement in the process of drawing blood to satisfy the requirements of LB 278, but acts as legal counsel to the Department. **See** Filing 68, Exhibit 3, p.2 and Exhibit 4, p. 3.

11. On September 9, 1998, the plaintiff submitted to the drawing of a blood sample. **See** *id.* Exhibit 1 - Granholm Aff. ¶ 6. However, the plaintiff's name and social security number were missing from the blood sample collected and, as a result, the sample was rejected by the Nebraska State Patrol laboratory. **Id.** ¶¶ 11-12 and Exhibit 2 - Request for Re-Sample form.

12. A new sample was requested on or about September 16, 1998. **See** Filing No. 68, Exhibit 2 - Request for Re-Sample form. However, the plaintiff refused to submit a new blood draw for DNA sampling. **See** Filing No. 68, Exhibit 1 - Granholm Aff. ¶ 16.

13. Both Deputy Warden West and former Warden Houston tried to encourage the plaintiff to submit to another sample that would be acceptable by the Nebraska State Patrol in accordance with the Act. **See** Filing No. 68, Exhibit 3 - West Aff. ¶ 5 and Exhibit 4 - Houston Aff. ¶ 21.

14. On September 24, 1998, a unit classification committee recommended that all of the plaintiff's good time should be administratively withheld and his sentence recalculated to the maximum prison term pursuant to the 1997 DNA Act. The plaintiff was given notice of the hearing. **See** Filing No. 68, Exhibit 3 - West Aff. ¶¶ 7-8.

15 The Institutional Classification Committee hearing, which included the Deputy Warden, also recommended that the plaintiff's good time be taken because the plaintiff had not provided a valid sample. The recommendation was made pursuant to the policy set forth in a memorandum by DCS central office in accordance with LB 278. **Id.** ¶¶ 8-9.

16.     Ms. Granholm had no part in the classification processes other than to maintain the records.  **See** Filing No. 68, Exhibit 1 - Granholm Aff. ¶¶ 17-22.

17      On August 3, 1999, based on the above loss of good time, the plaintiff brought an action seeking a declaratory judgment and injunctive relief, asserting that Neb. Rev. Stat. § 29-4106(2) was unconstitutional as applied to him.  **See** Filing No. 68, Exhibit 8 - Lancaster County Pleading; **see also** Filing No. 1 - Complaint ¶ 29.

18      The plaintiff also sought monetary damages for each day that he remained incarcerated past September 28, 1998.  **See** Filing No. 68, Exhibit 8 - Lancaster County Pleading at p. 13.

19.     On April 23, 2001, Judge Burns of the District Court for Lancaster County, Nebraska found that all claims for monetary relief were barred by the doctrine of qualified immunity.  **See** Filing No. 68, Exhibit 9 - Lancaster County Order p. 13-14.

20.     On July 26, 2001, Judge Steven D. Burns of the District Court for Lancaster County, Nebraska held that the extension of the incarceration of the plaintiff beyond September 28, 1998, under Neb. Rev. Stat. § 29-4106(2) was an unconstitutional application of the statute as it applied to the plaintiff because it violated the Ex Post Facto Clause of the United States Constitution, Article 1 10, cl. 1.  The Lancaster County court ordered that the plaintiff be immediately released from custody, and the plaintiff was released on July 26, 2001.  **See** Filing No. 79, Exhibit 1 - Lancaster County Judgment; Filing No. 1 - Complaint ¶ 30.

## LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." **See** Fed. R. Civ. P. 56(c); ***Nat'l Am. Ins. Co. v. W & G, Inc.***, 439 F.3d 943, 945 (8th Cir. 2006).  When making this determination, a court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, a court must "determine whether there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 249 (1986).  A court must "look to

the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" ***Chambers v. Metro. Prop. & Cas. Ins. Co.***, 351 F.3d 848, 853 (8th Cir. 2003) (**quoting** ***Anderson***, 477 U.S. at 248). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 323-24 (1986).

>  Additionally, Rule 56(e) provides:
>
>> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**See** Fed. R. Civ. P. 56(e). A party seeking summary judgment bears the burden of informing a court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." ***Celotex***, 477 U.S. at 323 (**quoting** Fed. R. Civ. P. 56(c)); ***Rodgers v. City of Des Moines***, 435 F.3d 904, 908 (8th Cir. 2006). In the face of a properly supported motion, the burden then shifts to the nonmoving party to "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); ***Murphy v. Missouri Dep't of Corr.***, 372 F.3d 979, 982 (8th Cir. 2004). A motion for summary judgment places an affirmative burden on the non-moving party to go beyond the pleadings and, by affidavit or otherwise, produce specific facts that show that there is a genuine issue for trial. **See** Fed. R. Civ. P. 56(e); ***Janis v. Biesheuvel***, 428 F.3d 795, 799 (8th Cir. 2005)

> Under this court's local rules:
>
>> The moving party shall set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no

> genuine issue to be tried and that entitle the moving party to judgment as a matter of law.

**See** NECivR 56.1(a)(1).

Additionally:

> The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts. The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response.

**See** NECivR 56.1(b)(1).

## ANALYSIS

### A.   *Rooker-Feldman* Doctrine

The defendant argues the plaintiff's claims are barred by the ***Rooker-Feldman*** doctrine because the plaintiff already sought monetary relief based on the same factual basis as an action in state court. The plaintiff denies ***Rooker-Feldman*** doctrine is applicable because the previous state court action did not include the current individual defendants. The plaintiff asserts he won his state court action and was released from incarceration, now he should be allowed to proceed against the individuals responsible for his damage based on a claim for violation of a liberty interest.

> The ***Rooker-Feldman*** doctrine acts as a jurisdictional bar, such that federal courts are not permitted to reconsider matters finally decided by state courts. ***Lemonds v. St. Louis County***, 222 F.3d 488, 492 (8th Cir. 2000). This rule not only prohibits "straightforward appeals," but also federal court review of matters "inextricably intertwined" with state court rulings. ***Id.*** at 492-93. "A general federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it.'" ***Id.*** at 493 (**quoting *Pennzoil Co. v. Texaco, Inc.***, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).

***United States v. Timley***, 443 F.3d 615, 628 (8th Cir. 2006).

      Relevant here, the plaintiff's state court action alleged claims against: "Harold Clarke, Director, and George Green, in their individual and official capacities and all other capacities and all other Jane Does and John Does acting on behalf of Harold Clarke in their official capacities." **See** Filing No. 68, Exhibit 8 - Pleading.  In the Lancaster County complaint, the plaintiff alleges facts describing his sentencing, submitting to, then refusing to give a DNA sample and the process which led to reclassification of his release date.  ***Id.*** p. 4-8.  In the claims section of the Lancaster County complaint, the plaintiff alleged "Clarke, through his Memo, Dated November 7, 1997, instructs Jane Does and John Does, to violate petitioner Duff's classification rights" and "Duff had a monetary loss due to illegal reclassification by staff, pursuant to the instructions given by Harold Clarke." ***Id.*** at p. 12. The plaintiff sought declaratory judgment for the 1997 DNA Act to be held unconstitutional in application to petitioners incarcerated prior to its enactment.  ***Id.*** at 12-13.  Additionally, the plaintiff sought injunctive relief for the return of his good time credit and his immediate release from custody.  ***Id.*** at 13.  The plaintiff also sought compensation "of $1,000 a day, for every day he was held past his mandatory release date," and lost wages. ***Id.***  In the Lancaster County order on a motion for summary judgment, Judge Burns cited applicable law regarding the qualified immunity defense from the United States Supreme Court and federal circuit courts, then states "Based on the foregoing criteria, the pleadings and evidence offered on the motion for summary judgment, all defendants are entitled to immunity from monetary judgment."  **See** Filing No. 68, Exhibit 9 p. 14.

      The defendant contends this action is identical to the state court action.  **See** Filing No. 67, p. 8.  In the current action, the plaintiff did initially name Harold Clarke and others as defendants, but only in their individual capacities.  The plaintiff also seeks lost income and compensatory damages in the complaint.  **See** Filing No. 1 p. 7.  The claim in the complaint is based on violation of the plaintiff's civil rights pursuant to 42 U.S.C. § 1983 for holding "the plaintiff for a period of one thousand and thirty-one days beyond his mandatory release date." ***Id.***

      Whether there were the same parties in the state court action as are currently in the federal action is not dispositive of the issue. **See *Lemonds***, 222 F.3d at 495.  However,

"considering the situation of the parties will often be helpful in the 'inextricably intertwined' analysis." *Id.* In this case, the plaintiff was the same in both actions. Accordingly, he had ample opportunity to litigate his claims before the state court. **See** *id.* at 495-96. The identity of the defendants does not make a material difference in the claims presented, however the plaintiff did specifically name Mr. Green in the state court complaint.

"[A] litigant cannot circumvent *Rooker-Feldman* by recasting his or her lawsuit as a § 1983 action." **Bechtold v. City of Rosemount**, 104 F.3d 1062, 1065 (8th Cir. 1997); **see** *Prince v. Arkansas Bd. of Examiners in Psychology*, 380 F.3d 337, 340 (8th Cir. 2004). Where the claims require the federal court to consider identical issues reviewed and decided in state court, the claims are barred by *Rooker-Feldman*. A claim is barred if the plaintiff is essentially challenging the state court judgment and seeking the same remedy sought in state court. **Johnson v. City of Shorewood**, 360 F.3d 810, 818-19 (8th Cir. 2004). In this case, the plaintiff seeks the same relief he sought in state court based on his illegal reclassification. Although the plaintiff prevailed on some of his claims in the state court, the state court specifically denied monetary relief based on qualified immunity for the individual defendants. The state court explicitly analyzed whether the plaintiff was entitled to monetary relief and whether the defendants were entitled to qualified immunity. The state court did not rely exclusively on state law principles, but cited federal qualified immunity jurisprudence. If this district court heard the plaintiff's § 1983 claim, it would apply the same law, and if it granted the plaintiff relief, the order would amount to a reversal of the state court. "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." **Pennzoil Co. v. Texaco Inc.**, 481 U.S. 1, 25 (1987) (Marshall, J., concurring). If the plaintiff prevailed on his claims in federal court, the relief "would effectively reverse the state court decision or void its ruling." **Johnson v. City of Shorewood**, 360 F.3d at 819 (**quoting** **Bechtold**, 104 F.3d at 1065 (§ 1983 claim barred by the *Rooker-Feldman* doctrine)). Under these principles, the plaintiff's claim is jurisdictionally barred.

**B.     Civil Rights - Qualified Immunity**

In the alternative, Mr. Green asserts he is entitled to qualified immunity. Qualified immunity shields government officials from liability, in their individual capacity, "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ***Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982). Furthermore, "qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." ***Malley v. Briggs***, 475 U.S. 335, 341 (1986). For a civil rights plaintiff to survive a motion for summary judgment on qualified immunity grounds, "a plaintiff must assert a violation of a constitutional right, show that this right is clearly established, and raise an issue of material fact as to whether the defendant would have known that the conduct in question violated the clearly established right." ***Biby v. Board of Regents, of Univ. of Nebraska at Lincoln***, 419 F.3d 845, 850 (8th Cir. 2005).

The plaintiff argues his right was clearly established and that the defendant knew or should have known because of the explanation in Judge Burns' order. **See** Filing No. 100 - Plaintiff's Brief p. 2-3. Additionally, the plaintiff contends Mr. Green was personally responsible for his damages based on Mr. Green's legal advice. ***Id.*** p. 6. The plaintiff alleges it was Mr. Green's responsibility to make sure the law was followed and Mr. Green's failure to do so caused the loss of the plaintiff's good time credit. ***Id.***

There is no evidence Mr. Green intentionally sabotaged the plaintiff's blood sample or intentionally sought to circumvent the law. **See** ***Gardner v. Howard***, 109 F.3d 427, (8th Cir. 1997) ("[A]n 'isolated incident, without any evidence of improper motive or resulting interference with [the inmate's constitutional or statutory right], does not give rise to a constitutional violation.'") (regarding inadvertently opening inmate's legal mail). The uncontested evidence shows a nurse was responsible for placing the inmate's name and social security number on the vial of blood, but in the plaintiff's case the information was not placed on the vial of blood. Within one week, a new sample was requested to remedy the error. However, the plaintiff refused to submit to a blood draw. Even if Mr. Green was ultimately responsible for ensuring compliance with the law, he could not have known that

failure to catch a labeling mistake by the nurse would result in the violation of a clearly established right of the plaintiff.

> [A] supervisor
>> may be held individually liable under § 1983 . . . if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.

***Wever v. Lincoln County, Nebraska***, 388 F.3d 601, 606-07 (8th Cir. 2004) (**quoting *Andrews v. Fowler***, 98 F.3d 1069, 1078 (8th Cir. 1996) (internal citations omitted)). The plaintiff has failed to show facts to defeat summary judgment which would indicate Mr. Green could have supervisory liability. There is no evidence Mr. Green acted, or failed to act, with a deliberate or reckless disregard of the plaintiff's constitutional rights.

Furthermore, there are no facts presented, which indicate any kind of personal involvement or supervisory authority by Mr. Green in the alleged constitutional violation. **See *Wever***, 388 F.3d at 606-07. Mr. Green did not participate in the decision to reclassify the plaintiff. Consequently, there is not sufficient evidence for a jury to hold Mr. Green liable for any of the plaintiff's alleged constitutional violations.

Furthermore, although the plaintiff prevailed in the state court proceeding by being immediately released from custody and having the extension of his incarceration declared an unconstitutional application of Neb. Rev. Stat. § 29-4106(2), the defendant was acting in accordance with a then unchallenged state statute. A statute is presumed to be constitutional, and all reasonable doubts are resolved in favor of its constitutionality. ***Polikov v. Neth***, 699 N.W.2d 802, 807 (Neb. 2005). "The official is not required to guess the direction of future legal decisions, but must rely on preexisting case law for guidance." ***Conrod v. Davis***, 120 F.3d 92, 95-96 (8th Cir. 1997) (**citing *Mitchell v. Forsyth***, 472 U.S. 511, 535 (1985) (holding "officials performing discretionary functions are not subject to suit when such questions are resolved against them only after they have acted") and ***Coffman v. Trickey***, 884 F.2d 1057, 1063 (8th Cir. 1989)). Accordingly, the defendant, to the extent he was personally involved in the decision to reclassify the plaintiff, did not violate clearly

11

established statutory or constitutional rights of which a reasonable person would have known. Therefore, George Green's Motion for Summary Judgment must be granted. Upon consideration,

**IT IS ORDERED:**

1. George Green's Motion for Summary Judgment (Filing No. 96) is granted.
2. This action and the plaintiff's Complaint are dismissed with prejudice.
3. Pursuant to Fed. R. Civ. P. 58, a separate judgment will be entered on this date in accordance with this Order and the Order entered January 17, 2007.

DATED this 25th day of April, 2007.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge